38088/01245/MHW/JFM

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

MELVIN WILLIAMS,

                  Plaintiff,

v.

RONALD SCHAEFER, M.D., et al.,

                  Defendants.

Case Number  14 CV 932

Judge Thomas M. Durkin

## MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, WEXFORD HEALTH SOURCES, INC.

NOW COMES the Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for its Fed. R. Civ. P. 56 Motion for Summary Judgment, states as follows:

1.      Plaintiff, MELVIN WILLIAMS, an inmate at Stateville Correctional Center, currently serving a 50-year sentence for murder, has filed a complaint against Illinois Department of Corrections' ("IDOC") medical vendor at Stateville, WEXFORD HEALTH SOURCES, INC. ("Wexford"), claiming violations related to, *inter alia*, failing to properly diagnose and prevent his diabetic hospitalization on June 14, 2011.  See Defendant, Wexford's, 56.1 Statement of Undisputed Facts ("SOF") at ¶¶ 8-10.

2.      The Plaintiff's Complaint sues Wexford based solely on the actions of its agents and employees in knowing that the Plaintiff was a diabetic, before he was diagnosed as a diabetic, and failing to prevent his diabetic episode.  (SOF at ¶ 8).  In other words, the Plaintiff is suing Wexford based on *respondeat superior* liability, a claim unequivocally barred by the controlling case law.  Even if the Plaintiff's Amended Complaint raised a *Monell* claim against Wexford, the undisputed medical testimony finds that no one knew that the Plaintiff was a

diabetic until June 14, 2011, that his symptoms were more suggesting of other conditions besides diabetes, like cancer, and that Wexford's medical providers on the ground at Stateville complied with the applicable standard of care in treating this Plaintiff. (SOF at ¶ 59, 73).

3. This Court has jurisdiction of this claim as it is based on 42 U.S.C. § 1983, and Wexford has consented to this Court's jurisdiction and venue by admission. (SOF at ¶¶ 1-2).

4. Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).

5. First, the Plaintiff cannot sue Wexford based on a theory of *respondeat superior* liability. The doctrine of *respondeat superior* liability does not apply to actions filed under 42 U.S.C. § 1983. *Pacelli v. Devito,* 972 F.2d 871, 877 (7th Cir. 1992).

6. Here, the Plaintiff has sued only Wexford, a private corporation. (SOF at ¶ 8). His First Amended Complaint does not allege that Wexford had an unconstitutional policy or practice that caused harm, as is required when suing a prison's medical provider. See *Hahn,* 762 F.3d at 638-39 citing *Monell v. Department of Social Servs. of City of New York,* 436 U.S. 658 (1978). Rather, the Complaint alleges that "[Wexford], by and through its agents or employees, had knowledge of and documented Plaintiff's abnormal blood laboratory results and failed to take action to treat Plaintiff"; "[Wexford], by and through its agents or employees, knew Plaintiff was a diabetic prior to him being hospitalized" and that as a result "[Wexford] exhibited deliberate indifference to Plaintiff's medical condition....[and]....Plaintiff incurred damages as a

result of Defendant's deliberate indifference to his medical condition, resulting in Plaintiff's June 14, 2011 diabetic shock and hospitalization." (SOF at ¶ 8) (emphasis added).

7. Accordingly, the Plaintiff has pled only a claim of *respondeat superior* liability against Wexford. Such a claim is barred by the controlling case law.

8. Even if this Court interprets the Plaintiff's First Amended Complaint as stating an actual claim against Wexford that is not based on *respondeat superior* liability, he has not met his burden of proving any such claim against Wexford. Private corporations acting under color of state law, like municipalities, may be held liable for injuries resulting from unconstitutional policies or practices. *Monell,*, 436 U.S. at 690-91. In order to recover against a corporate defendant under §1983, a plaintiff must show that the alleged injury was the result of the corporation's official policy or widespread practice. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).

9. First, the Plaintiff has not produced a single Wexford policy. Rather, the only "policy" discussed at any point during this litigation was a selection of favorable quotes the Plaintiff pulled from an outdated version of Wexford's Provider Handbook. (SOF at ¶ 18). As Dr. Funk, Wexford's designated Fed. R. Civ. P. 30(b)(6) witness, testified, the provider handbook is not an illustration of any Wexford policy or procedure. *Id.* Rather, it is information given to new employees to understand the unique situation of providing medical care to an incarcerated population. *Id.*

10. Second, the Plaintiff cannot meet his burden of proof on the second element of a *Monell* claim - that the unconstitutional policy was the "moving force" behind the alleged deliberate indifference because he has not identified any formal policy, whatsoever. *Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010). Without evidence of a formal, unconstitutional

policy, the Plaintiff must show that through a "series of bad acts" an inference is created that the officials were aware of and condoned their employees' misconduct. See *Id.*; *Stallings v. Hardy*, 11 c 8107, 2013 U.S. Dist. LEXIS 153402, *28, 2013 WL 5781805 (N.D. Ill. Oct. 25, 2013).

11. The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

12. First, there was no subjective knowledge communicated to the providers that the Plaintiff was a diabetic. The only medical doctor who gave testimony in this case testified that the Plaintiff was not a diagnosed diabetic until June 14, 2011, when his Accu-Check score came back high. (SOF at ¶ 59). The Plaintiff confirmed that prior to June 14, 2011; he was never diagnosed as a diabetic. (SOF at ¶ 40). He also had no prior family history of diabetes, no provider had ever suggested that he was a diabetic, and no provider suggested that he was even at risk for diabetes. (SOF at ¶ 40). The Plaintiff confirmed that prior to June 14, 2011; he never told any medical provider at Stateville that he had any concerns that he was a diabetic. (SOF at ¶ 41).

13. Second, there was no clearly objective knowledge available to the providers that the Plaintiff was a diabetic. Dr. Funk testified that there are three primary complaints that a new onset diabetic will make: (1) frequent urination; (2) weight loss; (3) excessive thirst. (SOF at ¶ 29). The Plaintiff complained of only one of those complaints - weight loss, and he only complained about weight loss one time, on June 13, 2011 - the day before he was diagnosed as a

diabetic on June 14, 2011. (SOF at ¶ 57). Rather, in the weeks leading up to June 14, 2011, **the Plaintiff complained about symptoms that are not suggestive of new onset diabetes** including: (1) dizziness, (2) pain in the legs; (3) pain in the feet; (4) tingling or numbness in the hands, legs, and feet; and (5) swelling in the hands and feet. (SOF at ¶ 30). As Dr. Funk noted, the Plaintiff's complaints in the weeks leading up to his diagnosis as a diabetic "were not at all suggestive of diabetes." (SOF at ¶ 68).

14.     Third, the Plaintiff cannot meet his burden of showing that the medical providers acted with the required culpability in treating his complaints. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle,* 429 U.S. at 107. In order to infer the required culpability for a claim of deliberate indifference based on a medical professional's care, the medical professional's decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

15.     Here, only one medical doctor gave testimony in this case. Plaintiff's counsel asked that doctor whether the entirety of the Plaintiff's complaints of pain in the lower extremities, tingling and numbness in the hands and feet, and swelling on and off indicated that the patient may have diabetes. (SOF at ¶ 68). The only doctor to give testimony in this case answered succinctly, "the answer to your question is no, absolutely not." (SOF at ¶ 68).

16.     Additionally, the Plaintiff has offered no verifying medical evidence in support of this claim that the providers' treatment was inadequate. Without medical evidence of inadequate

5

treatment, a prisoner's self-serving opinion of the quality of his medical treatment is insufficient to raise a genuine issue of material fact. *Walker v. Zunker*, 30 Fed. Appx. 625, 628 (7th Cir. 1999); see also *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

17.     The Plaintiff has, likewise, failed to carry his burden of identifying a pattern of neglect. The Seventh Circuit requires that, when assessing whether the Plaintiff has satisfied the extremely high burden of proving deliberate indifference, the totality of an inmate's medical care must be considered. See *Dunigan v. Winnebago County,* 165 F.3d 587, 591 (7th Cir. 1999).

18.     Here, in the seven weeks between when the Plaintiff first complained to CMT Barnett about pain in his leg and his transfer to St. Joseph hospital, the Plaintiff received five (5) medical appointments with four (4) different doctors and physicians assistants, had blood drawn and sent to the University of Illinois-Chicago Medical Center, and was given a referral for an ultrasound study of his liver. (SOF at ¶ 44, 47, 50, 54, 57).

19.     Since his diagnosis as a diabetic, the Plaintiff has received regular checkups every few months with a medical provider in Stateville's diabetic clinic in order to confirm that his diabetes, including diet, are well controlled; insulin twice per day; a special snack each evening to help him regulate his blood sugar levels; a permit from Wexford's Site Medical Director asking the IDOC to let him wear special shoes to alleviate his diabetic callouses; and education and counseling on how to manage his diabetes. (SOF at ¶ 67).

20.     Dr. Funk, who never treated this Plaintiff, testified that he reviewed the records and found the medical professionals' actions appropriate. (SOF at ¶¶ 68-72). Accordingly, at least one medical professional would have acted as these medical professionals did. Therefore, even if the Plaintiff has a claim for medical malpractice, he does not have a claim for deliberate indifference.

6

21.    Finally, in Count II of the Plaintiff's First Amended Complaint, he alleges that Wexford acted with deliberate indifference in failing to provide him with a special diet to manage his diabetes.  (SOF at ¶ 10).  However, this Plaintiff admitted that he already receives a special diet - an evening snack offered to regulate his blood sugar levels in the overnight hours.  (SOF at ¶ 37).  Unsatisfied with the evening snack, the Plaintiff wants a special diet containing more fish and fruit, even though his present diabetes, which has never been an issue in this litigation, is already well-controlled with the insulin and snack.  (SOF at ¶ 26).

22.    An inmate is not entitled to demand specific care, nor the best care possible, but rather he is entitled to reasonable measures to meet a substantial risk of harm.  *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).  Even if the evidence showed that this Plaintiff's preferred diet of "fish and fruit" is the best possible care for a diabetic, this inmate's diabetes is already well-controlled and regulated with twice daily insulin and his evening snack.  There is no indication that the Plaintiff's diabetes is uncontrolled such that he requires any dietary modification, let alone a specific diet of "fish and fruit" in his maximum security prison.

23.    In support of this Motion for Summary Judgment, Wexford attaches a Memorandum of Law and Local Rule 56.1 Statement of Facts, filed concurrently with this Motion.

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC., respectfully requests that this Honorable Court enter an Order granting summary judgment in its favor, dismissing the case, with prejudice, against it, costs, and for any other relief that this Court deems just.

Respectfully submitted,

CASSIDAY SCHADE LLP

By:  /s/ James F. Maruna
_____

One of the Attorneys for Defendant,
WEXFORD HEALTH SOURCES, INC.

Matthew H. Weller / ARDC No. 6278685
James F. Maruna / ARDC No. 6313433
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
mweller@cassiday.com
jmaruna@cassiday.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2016 I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

/s/ James F. Maruna

8235030 JMARUNA;JMARUNA