38088/01245/MHW/JFM

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

MELVIN WILLIAMS,

                Plaintiff,

v.

RONALD SCHAEFER, M.D., et al.,

                Defendants.

Case Number  14 CV 932

Judge Thomas M. Durkin

## MEMORANDUM OF LAW SUPPORTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, WEXFORD HEALTH SOURCES, INC.

NOW COMES the Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for its Memorandum of Law in Support of its Fed. R. Civ. P. 56.1 Motion for Summary Judgment, states as follows:

## I.  INTRODUCTION

Plaintiff, MELVIN WILLIAMS, an inmate at Stateville Correctional Center, currently serving a 50-year sentence for murder, has filed a complaint against Illinois Department of Corrections' ("IDOC") medical vendor at Stateville, Wexford Health Sources, Inc. ("Wexford"), claiming violations related to, *inter alia*, failing to properly diagnose and prevent his diabetic hospitalization on June 14, 2011.  See Defendant, Wexford's, 56.1 Statement of Undisputed Facts ("SOF") at ¶¶ 8-10.  The Plaintiff's Complaint sues Wexford based solely on the actions of its agents and employees in knowing that the Plaintiff was a diabetic, before he was ever diagnosed as a diabetic, and failing to prevent his diabetic hospitalization.  (SOF at ¶ 8).  In other words, the Plaintiff is suing Wexford based on *respondeat superior* liability, a claim unequivocally barred by the controlling case law.  Even if the Plaintiff's Amended Complaint

raised a *Monell* claim against Wexford, the undisputed medical testimony finds that the Plaintiff has identified no unconstitutional policy, and that, even if he did, the Plaintiff's symptoms were more suggesting of other conditions besides diabetes, like cancer, and Wexford's medical providers on the ground at Stateville complied with the applicable standard of care in further evaluating this Plaintiff for the possibility of recurrent cancer. (SOF at ¶ 59, 73). At best, the Plaintiff may have the basis of a medical negligence claim, but medical negligence is not constitutional deliberate indifference. Accordingly, this Honorable Court should enter an Order granting summary judgment in favor of Wexford and against the Plaintiff.

## II.  MATERIAL FACTS

Wexford incorporates its 56.1 Statement of Undisputed Facts, and accompanying exhibits, filed concurrently with its Motion for Summary Judgment and supporting Memorandum of Law.

## III.  ARGUMENT

**A.    Venue and Jurisdiction are proper**

This is a claim based on 42 U.S.C. § 1983 and Wexford has consented to this Court's jurisdiction and venue by admission. (SOF at ¶¶ 1-2).

**B.    Summary Judgment is proper in this matter**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Though facts must be viewed in the light most favorable to the non-moving party at the summary judgment stage, this rule only applies if there is a "genuine" dispute as to those

facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). "A mere scintilla of evidence" in support of the non-movant's position is insufficient; a party will only be successful in opposing summary judgment "when it presents definite, competent evidence to rebut the motion." *Essex v. United Parcel Serv. Inc.,* 111 F.3d 1304, 1308 (7th Cir. 1997).

**C.     The Plaintiff has Failed to Prove his Claim Against Wexford Health Sources, Inc.**

   1.     <u>*The Plaintiff Cannot Sue Wexford Based on Respondeat Superior Liability*</u>

The Plaintiff cannot sue Wexford based on a theory of *respondeat superior* liability. It is "well established that Section 1983 creates a cause of action based on personal liability that is predicated upon fault." *Pepper v. Village of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005). The doctrine of *respondeat superior* liability does not apply to actions filed under 42 U.S.C. § 1983. *Pacelli v. Devito*, 972 F.2d 871, 877 (7th Cir. 1992).

In *Iskander v. Forest Park*, the Plaintiff tried to sue a private corporation based on the alleged civil rights violations committed by the private corporation's employee. 690 F.2d 126, 127 (7th Cir. 1982). The Seventh Circuit held that "Section 1983 will not support a claim based on a *respondeat superior* theory of liability." *Id.* at 129. Moreover, the Seventh Circuit held that, "just as a municipal corporation is not vicariously liable upon a theory of *respondeat superior* for the constitutional torts of its employees…a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Id.* As the Seventh Circuit recently noted, "*Iskander* is compatible with the holding of every circuit to have addressed the issue." *Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014).

Here, the Plaintiff has sued only Wexford, a private corporation. (SOF at ¶ 8). His First Amended Complaint does not allege that Wexford had an unconstitutional policy or practice that caused harm, as is required when suing a prison's medical provider. See *Hahn,* 762 F.3d at 638-

39 citing *Monell v. Department of Social Servs. of City of New York,* 436 U.S. 658 (1978). Rather, the Complaint alleges that "[Wexford], <u>by and through its agents or employees</u>, had knowledge of and documented Plaintiff's abnormal blood laboratory results and failed to take action to treat Plaintiff"; "[Wexford], <u>by and through its agents or employees</u>, knew Plaintiff was a diabetic prior to him being hospitalized" and that as a result "[Wexford] exhibited deliberate indifference to Plaintiff's medical condition….[and]….Plaintiff incurred damages as a result of Defendant's deliberate indifference to his medical condition, resulting in Plaintiff's June 14, 2011 diabetic shock and hospitalization." (SOF at ¶ 8) (emphasis added).

Not only does the wording of the Plaintiff's allegations invoke *respondeat superior* liability ("by and through its agents or employees") but the specific allegations against Wexford set out the allegations necessary to establish a claim against an individual rather than a corporation. Accordingly, the Plaintiff has pled only a claim of *respondeat superior* liability against Wexford. Such a claim is barred by the controlling case law. Therefore, this Court should enter judgment as a matter of law in favor of Wexford.

2.    <u>*Even if the Plaintiff has Pled a Monell Claim Against Wexford, He Has Not Identified Any Unconstitutional Policy or Practice*</u>

Even if this Court interprets the Plaintiff's First Amended Complaint as stating an actual claim against Wexford that is, somehow, not based on *respondeat superior* liability, he has not met his burden of proof in suing a corporation under § 1983. Private corporations acting under color of state law, like municipalities, may be held liable for injuries resulting from unconstitutional policies or practices. *Monell*, 436 U.S. at 690-91; *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009). In order to recover against a corporate defendant under §1983, a plaintiff must show that the alleged injury was the result of the corporation's official policy or widespread practice. *See Pembaur v. City of Cincinnati*, 475

U.S. 469, 479-80 (1986). There are two components to this inquiry, first the Plaintiff must show that an unconstitutional policy or practice exists, and then, second, the Plaintiff must show that deliberate indifference occurred as a result of this unconstitutional policy or practice. The Plaintiff fails on both showings.

First, the Plaintiff has not produced a single Wexford policy. Rather, the only "policy" discussed at any point during this litigation was a selection of favorable quotes the Plaintiff pulled from an outdated version of Wexford's Provider Handbook. As Dr. Funk, Wexford's designated Fed. R. Civ. P. 30(b)(6) witness, testified, the provider handbook is not an illustration of any Wexford policy or procedure. (SOF at ¶ 18). Rather, it is information given to new employees to understand the unique situation of providing medical care to an incarcerated population. *Id.* In any event, both Dr. Funk and CMT Olsen-Foxon testified that the IDOC's administrative and institutional directives, rather than Wexford's, govern the administration of healthcare to inmates at Stateville. *Id.*

Absent clear evidence of an unconstitutional policy, this Court should not assume that one exists. In *Montague v. Wexford Health Sources, Inc.*, the Seventh Circuit affirmed the District Court's grant of summary judgment to Wexford when an inmate claimed that Wexford had an unconstitutional policy or practice, but could produce no evidence of any such policy or practice. 615 Fed. Appx. 378, 379 (7th Cir. 2015). The Seventh Circuit noted that the prisoner's self-serving idea of a policy or practice that promoted delaying medical treatment was senseless because a policy to provide inadequate medical care would actually end up costing Wexford more money in the long-term. *Id.*

*Montague* is instructive in the instant litigation. Plaintiff has produced no evidence of an unconstitutional policy. Nor does it make sense that Wexford would have an "off the books"

policy to provide inadequate medical treatment because such a policy would end up costing Wexford more money in the long-term either through increased medical costs, such as emergency medical treatment, or increased litigation costs.

Discovery has closed and the Plaintiff cannot meet his first hurdle in proving a *Monell* claim - that an unconstitutional policy or practice exists. Therefore, this Court should grant summary judgment in Wexford's favor.

3.  *The Wexford Medical Providers Did Not Exhibit Deliberate Indifference*

Similarly, the Plaintiff cannot meet his burden of proof on the second element of a *Monell* claim - that deliberate indifference occurred. *Pembaur*, 475 U.S. at 479-80. As noted, in order to prove a *Monell* violation, the Plaintiff must first show that an unconstitutional policy or practice existed and then, second, must show that the unconstitutional policy was the "direct cause" or "moving force" behind the alleged deliberate indifference to his serious medical needs. See *Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010). The Plaintiff may show that the policy is the "moving force" behind the constitutional violation by demonstrating that the policy, itself, is unconstitutional. *Id.* However, whereas here, when the plaintiff has identified no formal policy that is unconstitutional, the plaintiff must make his required deliberate indifference showing through "a series of bad acts" creating an inference that the officials were aware of and condoned their employees' misconduct. See *Id*.; see also *Stallings v. Hardy*, 11 c 8107, 2013 U.S. Dist. LEXIS 153402, *28, 2013 WL 5781805 (N.D. Ill. Oct. 25, 2013)(Because the individual Wexford doctors did not commit deliberate indifference, "Wexford cannot be liable for an allegedly ineffective custom or policy of providing overall medical care to prisoners").

The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2)

that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

In other words, the Plaintiff must establish that the medical providers actually knew (independently and subjectively) that the Plaintiff needed treatment for a serious medical need or risk but nevertheless purposely and deliberately withheld such treatment. See *Sellers*, 41 F.3d at 1102 (emphasis added).

As the only Defendant in this case is Wexford, we will look to the conduct of the medical providers in this case in order to establish whether any provider's care of this inmate constituted deliberate indifference. If not, a *Monell* claim against Wexford cannot succeed.

        a.     *The Plaintiff cannot prove that the providers' had the requisite personal knowledge that he was a diabetic or at risk of developing diabetes prior to June 14, 2011*

The Plaintiff cannot satisfy his burden of proving that the medical providers knew that he was a diabetic prior to June 14, 2011. In order to establish subjective knowledge, the Plaintiff must show that, "the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an 'excessive risk to inmate health or safety'". *Vance*, 97 F.3d at 993, citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

First, there was no subjective knowledge communicated to the providers that the Plaintiff was a diabetic. The only medical doctor who gave testimony in this case testified that the Plaintiff was not a diagnosed diabetic until June 14, 2011, when his Accu-Check score came back high. (SOF at ¶ 59). The Plaintiff confirmed that prior to June 14, 2011, he was never diagnosed as a diabetic. (SOF at ¶ 40). He also had no prior family history of diabetes, no

provider had ever suggested that he was a diabetic, and no provider suggested that he was even at risk for diabetes. (SOF at ¶ 40). The Plaintiff confirmed that prior to June 14, 2011, he never told any Stateville medical provider that he had any concerns he was a diabetic. (SOF at ¶ 41).

Second, there was no objective knowledge available to the providers that the Plaintiff was a diabetic. Dr. Funk testified that there are three primary complaints that a new onset diabetic will make: (1) frequent urination; (2) weight loss; and (3) excessive thirst. (SOF at ¶ 29). The Plaintiff complained of only one of those symptoms - weight loss; and he only complained about weight loss one time, on June 13, 2011 - the day before he was diagnosed as a diabetic on June 14, 2011. (SOF at ¶ 57). Rather, in the weeks leading up to June 14, 2011, **the Plaintiff complained about symptoms that are not suggestive of new onset diabetes** including (1) dizziness, (2) pain in the legs; (3) pain in the feet; (4) tingling or numbness in the hands, legs, and feet; and (5) swelling in the hands and feet. (SOF at ¶ 30). As Dr. Funk noted, the Plaintiff's complaints in the weeks leading up to his diagnosis as a diabetic "were not at all suggestive of diabetes." (SOF at ¶ 68).

Simply, there is no evidence in the record that any medical provider had any knowledge, whatsoever, that this Plaintiff was a diabetic, was developing diabetes, or was even at risk for diabetes. As such, the Plaintiff cannot satisfy his burden of proving that any medical provider knew about his condition and deliberately or recklessly withheld treatment.

> b.   *Nor can the Plaintiff show that the medical providers displayed the required culpability*

The Plaintiff cannot meet his burden of showing that the medical providers acted with the required culpability in treating his complaints. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle,* 429 U.S. at 107. In order to infer the required culpability for

a claim of deliberate indifference based on a medical professional's care, the medical professional's decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). An inmate is not entitled to demand specific care, nor the best care possible, but rather, he is entitled to reasonable measures to meet a substantial risk of serious harm to him. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Mere disagreement with a doctor's medical judgment does not amount to deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). Questions of whether certain diagnostic techniques or forms of treatment are warranted are a "classic example of a matter for medical judgment". *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996).

Here, only one medical doctor gave testimony in this case. The Plaintiff's attorney asked that doctor whether the medical providers acted outside the standard of care in working up alternative diagnoses, namely cancer, as opposed to recognizing that the Plaintiff was a diabetic. That doctor testified, unequivocally, that working up the cancer diagnosis fell within the standard of care. (SOF at ¶ 73). Plaintiff's counsel then asked that doctor whether the entirety of the Plaintiff's complaints of pain in the lower extremities, tingling and numbness in the hands and feet, swelling on and off indicated that the patient may have diabetes. (SOF at ¶ 68). The doctor answered succinctly, "the answer to your question is no, absolutely not." (SOF at ¶ 68).

Rather than working up a diagnosis of diabetes, a condition the Plaintiff had no history of or even complaints suggestive of, the providers worked up a diagnosis of recurrent cancer based on the fact that in 2007, the Plaintiff had cancer that required surgical removal of a kidney, that a

blood test taken in April 2011 found an abnormal AFP tumor marker reading that could indicate a cancer of the liver, and that the Plaintiff complained on June 13th of losing 40 pounds, which could also be caused by cancer. (SOF at ¶ 48, 57, 70). To further evaluate the possibility of a liver cancer, Stateville's Medical Director ordered a liver ultrasound study for this Plaintiff one day before the Plaintiff was found in his cell sluggish and subsequently diagnosed as a diabetic. (SOF at ¶ 57).

The Plaintiff has offered no verifying medical evidence in support of this claim that the providers' treatment was inadequate. Without medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of his medical treatment is insufficient to raise a genuine issue of material fact. *Walker v. Zunker*, 30 Fed. Appx. 625, 628 (7th Cir. 1999); see also *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001)(finding that a plaintiff must have such "verifying medical evidence" when the deliberate indifference claim is based on the alleged failure to treat a condition adequately). Conversely, Dr. Funk testified that the providers' treatment was appropriate. (SOF at ¶¶ 68-73).

Between April - June 2011, the Plaintiff made complaints more consistent with other medical conditions besides diabetes. The medical providers properly worked up those conditions. To succeed on his claim, the Plaintiff must show that "no minimally competent medical professional would have so responded under these circumstances." *Sain*, 512 at 894-95. He requires verifying medical testimony, and has offered none. Accordingly his claim fails.

c.     *Nor can the Plaintiff show that the providers acted with neglect*

The Plaintiff has failed to carry his burden of identifying a pattern of neglect. The Seventh Circuit requires that, when assessing whether the Plaintiff has satisfied the extremely high burden of proving deliberate indifference, the totality of an inmate's medical care must be considered. See

*Dunigan v. Winnebago County,* 165 F.3d 587, 591 (7th Cir. 1999). A plaintiff's "factual highlights" are not sufficient to deny summary judgment in the defense's favor. *Id.* A pattern of neglect must be evident in the record. See *Id.*; see also, e.g., *Guttierez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997)(holding that isolated incidents of neglect during an otherwise continuous stretch of adequate medical care is insufficient to support an inference of deliberate indifference and a court must examine the entire record, not just isolated events).

Here, in the seven weeks between when the Plaintiff first complained to CMT Barnett about pain in his leg and his transfer to St. Joseph hospital, the Plaintiff received five (5) medical appointments with four (4) different doctors and physicians' assistants, had blood drawn and sent out to the University of Illinois-Chicago Medical Center, and was given a referral for an ultrasound study of his liver. (SOF at ¶ 44, 47, 50, 54, 57). In addition to his appointments with medical providers, the Plaintiff had access to nursing sick call where he could request an appointment with a provider at any time. (SOF at ¶13). The Plaintiff admitted that he could always get medical attention at Stateville if he needed attention. (SOF at ¶15). While his April 22, 2011 M.D. Sick Call was cancelled due to no provider being available, it occurred a few weeks later, and, in any event, the Plaintiff saw another provider for another condition on April 25, 2011, where he could have easily addressed any emergent concerns. (SOF at ¶ 49, 51, 54).

Since his diagnosis as a diabetic, the Plaintiff has received regular checkups every few months with a medical provider in Stateville's diabetic clinic in order to confirm that his diabetes, including diet, are well controlled; insulin twice per day; a special snack each evening to help him regulate his blood sugar levels; a permit from Wexford's Site Medical Director asking the IDOC to let him wear special shoes to alleviate his diabetic calluses; and education and counseling on how

to manage his diabetes. (SOF at ¶ 67). Clearly, there has been no neglect by the medical providers in handling the Plaintiff's diabetes.

> d. At best, the Plaintiff may have a claim for medical negligence, but medical negligence is not deliberate indifference

At best, the Plaintiff has pled a claim for medical negligence, but medical negligence is not a claim for constitutional deliberate indifference. It is well settled that gross negligence, tortious recklessness or even ordinary negligence are not enough to establish a claim for deliberate indifference. *Duckworth*, 780 F.2d at 652-53; *Varnado*, 920 F.2d at 321. Unsuccessful treatment and medical malpractice are not sufficient to establish the required culpability behind a claim for deliberate indifference. *Varnado*, 920 F.2d at 321. "The Constitution is not a medical code that mandates specific medical treatment". *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal brackets omitted). Moreover, to even proceed on a theory of medical negligence, the Plaintiff needed the affidavit of a qualified healthcare professional to support his claims, as required by the Illinois Healing Art Malpractice Act, 735 ILCS 5/2-622. See *Liebich v. Hardy*, 11 C 5624, 2014 U.S. Dist. LEXIS 49550, *4-5, 2014 WL 1395957 (N.D. Ill. Apr. 10, 2014). He provided no such affidavit.

A doctor can "make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards." *Holloway v. Del. County Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012). "A doctor might be careless…, and this carelessness may constitute malpractice. But malpractice alone is not enough to meet the constitutional standard". *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000).

The Plaintiff cannot claim that the medical providers ignored or refused to treat his condition. They clearly ordered more tests - they just were testing for the wrong condition. In

the light most favorable to the Plaintiff, his claim is that the medical providers misdiagnosed his condition as a possible cancer when they should have recognized that he was a diabetic. Had they correctly diagnosed his condition as new onset diabetes, he would not have required hospitalization. However, the undisputed testimony in this case finds that four different medical providers, when evaluating the Plaintiff's history and presentation, found that his symptoms and presentation did not remotely suggest diabetes, so they never ordered a glucose test. (SOF at ¶ 68). The testimony finds that the Plaintiff's rapid weight loss between his May and June medical appointments was also suggestive of cancer and many other conditions besides diabetes. (SOF at ¶ 69). Accu-Check measurements are only given to inmates already diagnosed as diabetic. (SOF at ¶ 72). Perhaps one or all of the providers were negligent in misdiagnosing this Plaintiff. However, medical negligence is not a claim for deliberate indifference.

The standard for deliberate indifference is much higher than medical negligence. In this case, unless the Plaintiff can show that "no minimally competent medical professional would have so responded under these circumstances" he loses this case. *Sain*, 512 at 894-95. Here, Dr. Funk, who never treated this Plaintiff, testified that he reviewed the records and found the medical professionals' actions appropriate. (SOF at ¶¶ 68-72). Accordingly, at least one medical professional would have acted as these medical professionals did. Therefore, even if the Plaintiff has a claim for medical negligence, he does not have a claim for deliberate indifference.

4. *The Plaintiff has Not Established that Wexford's Failure to Give the Plaintiff his Desired Diet Constitutes Deliberate Indifference*

Finally, the Plaintiff has not established that Wexford's, alleged, failure to provide him with a special diabetic diet constitutes deliberate indifference. In Count II of the Plaintiff's First Amended Complaint, he alleges that Wexford acted with deliberate indifference in failing to provide him with a special diet to manage his diabetes. (SOF at ¶ 10). As this is a claim for

deliberate indifference, the same standards and arguments discussed above apply to how the Court should adjudicate this claim against Wexford.

Here, the undisputed facts find that Wexford has no control over the food process at Stateville. (SOF at ¶ 26). This inmate first requested a special diabetic diet from an IDOC employee, the last person he spoke with regarding his diet was an IDOC employee, and he has not spoken with any medical provider, at all, about this diet since 2012. (SOF at ¶ 27).

Moreover, this Plaintiff actually already receives a special diet for his diabetes - he just wants different food. The Plaintiff admitted that insulin-dependent diabetic patients at Stateville are offered a special evening snack. (SOF at ¶ 37). Inmates receive this snack because they get insulin in the morning and before bed. (SOF at ¶ 37). After the morning insulin, the inmate gets breakfast, lunch, and dinner to raise his blood sugar. (SOF at ¶37). However, after the evening insulin, no food is delivered to a patient until the next morning. (SOF at ¶ 37). The evening snack is offered to the inmate in order to raise his blood sugar levels during the overnight hours, if needed. (SOF at ¶ 37).

Unsatisfied with the evening snack, the Plaintiff wants a special diet containing more fish and fruit, even though he does not know if that diet exists at Stateville. (SOF at ¶ 26). The Plaintiff wants this diet so that he can manage his diabetes, which his medical records demonstrate is already well-controlled and has never been an issue in this litigation, even though the Plaintiff admitted that he purchases sugary foods from Stateville's commissary including candy bars and candy cakes. (SOF at ¶ 66). It is settled that an inmate is not entitled to demand specific care, nor the best care possible, but rather he is entitled to reasonable measures to meet a substantial risk of harm. *Norfleet*, 439 F.3d at 396.

Even if the evidence showed that this Plaintiff's preferred diet of "fish and fruit" is the best possible care for a diabetic, this inmate's diabetes is already well-controlled and regulated with twice daily insulin and his evening snack. There is no indication that the Plaintiff's diabetes is uncontrolled such that he requires any dietary modification, let alone a specific diet of "fish and fruit" at his maximum security penal institution. As such, his current diet and treatment accommodate his diabetic condition. Accordingly, his claim of deliberate indifference for Wexford failing to provide a special diet of "fish and fruit" fails.

## IV. CONCLUSION

The Plaintiff has failed to produce any evidence sufficient to show that Wexford acted with deliberate indifference toward his diabetes. First, the Plaintiff has only sued Wexford under a theory of *respondeat superior* liability which is not a basis for liability in a § 1983 claim. Even if there is a claim against Wexford, the Plaintiff has not identified any unconstitutional policy or practice, nor has he identified any deliberately indifferent behavior by Wexford's medical providers. Also, the Plaintiff wants a special diet of "fish and fruits" at his maximum security penal institution even though his diabetes is already well-controlled with insulin and a special evening snack. At best, the Plaintiff may have pled a claim for medical negligence against the individual physicians for working up a cancer diagnosis instead of a diabetes diagnosis, but medical negligence is not deliberate indifference, and he has sued only Wexford rather than any individuals.

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC., respectfully requests that this Honorable Court enter an Order granting summary judgment in its favor, dismissing the case, with prejudice, against it, costs, and for any other relief that this Court deems just.

Respectfully submitted,

CASSIDAY SCHADE LLP

By:  /s/ James F. Maruna
      One of the Attorneys for Defendant,
      WEXFORD HEALTH SOURCES, INC.

Matthew H. Weller / ARDC No. 6278685
James F. Maruna / ARDC No. 6313433
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
mweller@cassiday.com
jmaruna@cassiday.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 25, 2016 I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

<u>/s/ James F. Maruna</u>

8234309 JMARUNA;JMARUNA

17