38088/01245/MHW/JFM

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

MELVIN WILLIAMS,

          Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC.,

          Defendant.

Case Number  14 CV 932

Judge Thomas M. Durkin

### MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, WEXFORD HEALTH SOURCES, INC.

NOW COMES the Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for its Fed. R. Civ. P. 56 Motion for Summary Judgment, states as follows:

1.      Plaintiff, MELVIN WILLIAMS, an inmate at Stateville Correctional Center, currently serving a 50-year sentence for murder, has filed a complaint against Illinois Department of Corrections' ("IDOC") medical vendor at Stateville, WEXFORD HEALTH SOURCES, INC. ("Wexford"), claiming violations related to, *inter alia*, failing to properly diagnose and prevent his diabetic hospitalization on June 14, 2011.  *See* Defendant, Wexford's, 56.1 Statement of Undisputed Facts ("SOF") at ¶¶ 8-10.

2.      The Plaintiff's Complaint sues Wexford, ostensibly, for having a "wide-spread policy or practice of delaying medical treatment to its inmates" despite having no evidence on how Wexford treats other inmates.  (SOF at ¶ 8).  In fact, despite receiving leave to amend his complaint and plead a *Monell* claim, the Plaintiff still alleges that Wexford violated his constitutional rights "by and through its employee Bautista" - plainly, *respondeat superior* liability.  (SOF at ¶ 9).

3.      Even if Plaintiff did plead a viable *Monell* claim against Wexford, it still fails because he cannot prove the underlying medical deliberate indifference.  The Plaintiff claims that Wexford knew of, but failed to prevent his hyperglycemic hospitalization; however, the only medical evidence in this case finds that the Plaintiff had no medical history of diabetes and in the days leading up to his hyperglycemic event, his medical symptoms actually suggested cancer, a condition that he previously experienced, rather than new onset diabetes.  (SOF at ¶ 59, 73).

4.      This Court has jurisdiction of this claim as it is based on 42 U.S.C. § 1983, and Wexford has consented to this Court's jurisdiction and venue by admission.  (SOF at ¶¶ 1-2).

5.      First, the Plaintiff has pled a *Monell* claim against Wexford but has not identified any unconstitutional policy or widespread practice.  In order to recover against a corporate defendant under §1983, a plaintiff must show that the alleged injury was the result of the corporation's official policy or widespread practice.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).  Here, the Plaintiff has not produced a single Wexford policy.  Rather, the only "policy" discussed at any point during this litigation was a selection of favorable quotes that the Plaintiff pulled from an outdated version of Wexford's Provider Handbook.  As Dr. Funk, Wexford's designated Fed. R. Civ. P. 30(b)(6) witness, testified, the provider handbook is not an illustration of any Wexford policy or procedure.  (SOF at ¶ 18).

6.      Next, turning to the Plaintiff's widespread practice claim, a prisoner needs evidence of how other inmates were treated in order to show that his treatment was not a "random event" but truly the result of a corporate policy.  *Grieveson v. Anderson,* 538 F.3d 763, 774 (7th Cir. 2008).  Conclusory, factually unsupported allegations about the experience of other inmates are not a sufficient basis to prove *Monell* liability against Wexford.  *Haywood v. Wexford Health Sources, Inc.,* 16-cv-3566, 2017 U.S. Dist. LEXIS 28416, * 11 (N.D. Ill. Mar. 1,

2017). Here, the Plaintiff has not produced any evidence of how other inmates were affected by Wexford's alleged "wide-spread" practice of delaying medical treatment; instead, his claim of a widespread practice is limited to only his own experience.

7. Nor can the Plaintiff sue Wexford based on the actions of its employees for a § 1983 tort. *Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014). Despite amending his pleading in order to, ostensibly, sue Wexford for *Monell* liability, Plaintiff's Second Amended Complaint still contains numerous allegations of *respondeat superior* liability, "Defendant Wexford, by and through its agents or employees, had knowledge of and documented Plaintiff's abnormal blood laboratory test results and failed to take action…"; "Wexford, by and through its employee Bautista, failed to render medical treatment"; "Defendant Wexford, by and through its employee Bautista, acted with reckless disregard in failing to diagnose and treat Plaintiff as a diabetic". (SOF at ¶ 9) (emphasis added).

8. Even if the Plaintiff had met his burden of proof in establishing an unconstitutional policy or widespread practice of Wexford, he still fails the second hurdle of his *Monell* claim - that deliberate indifference occurred because of that policy or widespread practice. *Pembaur*, 475 U.S. at 479-80. As noted, in order to prove a *Monell* violation, the Plaintiff must first show that an unconstitutional policy or practice existed and then, second, must show that the unconstitutional policy was the "direct cause" or "moving force" behind the alleged deliberate indifference to his serious medical needs. *See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010). The Plaintiff may show that the policy is the "moving force" behind the constitutional violation by demonstrating that the policy, itself, is unconstitutional. *Id.* However, whereas here, when the Plaintiff has identified no formal policy that is unconstitutional, the Plaintiff must make his required deliberate indifference showing through "a

series of bad acts" creating an inference that the officials were aware of and condoned their employees' misconduct. *See Id*.; *see also Stallings v. Hardy*, 11 c 8107, 2013 U.S. Dist. LEXIS 153402, *28, 2013 WL 5781805 (N.D. Ill. Oct. 25, 2013) (holding that because the individual Wexford doctors did not commit deliberate indifference, "Wexford cannot be liable for an allegedly ineffective custom or policy of providing overall medical care to prisoners").

9.      The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996).

10.      First, there was no subjective knowledge communicated to the providers that the Plaintiff was a diabetic. The only medical doctor who gave testimony in this case testified that the Plaintiff was not a diagnosed diabetic until June 14, 2011, when his Accu-Check score came back high. (SOF at ¶ 59). The Plaintiff confirmed that prior to June 14, 2011; he was never diagnosed as a diabetic. (SOF at ¶ 40). He also had no prior family history of diabetes, no provider had ever suggested that he was a diabetic, and no provider suggested that he was even at risk for diabetes. (SOF at ¶ 40). The Plaintiff confirmed that prior to June 14, 2011; he never told any medical provider at Stateville that he had any concerns that he was a diabetic. (SOF at ¶ 41).

11.      Second, there was no clearly objective knowledge available to the providers that the Plaintiff was a diabetic. Dr. Funk testified that there are three primary complaints that a new onset diabetic will make: (1) frequent urination; (2) weight loss; (3) excessive thirst. (SOF at ¶

29).   The Plaintiff complained of only one of those complaints - weight loss, and he only complained about weight loss one time, on June 13, 2011 - the day before he was diagnosed as a diabetic on June 14, 2011.  (SOF at ¶ 57).  Rather, in the weeks leading up to June 14, 2011, the Plaintiff complained about symptoms that are not suggestive of new onset diabetes including: (1) dizziness, (2) pain in the legs; (3) pain in the feet; (4) tingling or numbness in the hands, legs, and feet; and (5) swelling in the hands and feet.  (SOF at ¶ 30).  **As Dr. Funk noted, the Plaintiff's complaints in the weeks leading up to his diagnosis as a diabetic "were not at all suggestive of diabetes."**  (SOF at ¶ 68).

12.      Third, the Plaintiff cannot meet his burden of showing that the medical providers acted with the required culpability in treating his complaints.  The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk.  *Estelle,* 429 U.S. at 107.  In order to infer the required culpability for a claim of deliberate indifference based on a medical professional's care, the medical professional's decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

13.      Here, only one medical doctor gave testimony in this case.  Plaintiff's counsel asked that doctor whether the entirety of the Plaintiff's complaints of pain in the lower extremities, tingling and numbness in the hands and feet, and swelling on and off indicated that the patient may have diabetes.  (SOF at ¶ 68).  The only doctor to give testimony in this case answered succinctly, "the answer to your question is no, absolutely not."  (SOF at ¶ 68).

14. Additionally, the Plaintiff has offered no verifying medical evidence in support of this claim that the providers' treatment was inadequate. Without medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of his medical treatment is insufficient to raise a genuine issue of material fact. *Walker v. Zunker*, 30 Fed. App'x. 625, 628 (7th Cir. 1999); *see also Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

15. The Plaintiff has, likewise, failed to carry his burden of identifying a pattern of neglect. The Seventh Circuit requires that, when assessing whether the Plaintiff has satisfied the extremely high burden of proving deliberate indifference, the totality of an inmate's medical care must be considered. *See Dunigan v. Winnebago County,* 165 F.3d 587, 591 (7th Cir. 1999).

16. Here, in the seven weeks between when the Plaintiff first complained to CMT Barnett about pain in his leg and his transfer to St. Joseph hospital, the Plaintiff received five (5) medical appointments with four (4) different doctors and physicians assistants, had blood drawn and sent to the University of Illinois-Chicago Medical Center, and was given a referral for an ultrasound study of his liver. (SOF at ¶ 44, 47, 50, 54, 57).

17. Since his diagnosis as a diabetic, the Plaintiff has received regular checkups every few months with a medical provider in Stateville's diabetic clinic in order to confirm that his diabetes, including diet, are well controlled; insulin twice per day; a special snack each evening to help him regulate his blood sugar levels; a permit from Wexford's Site Medical Director asking the IDOC to let him wear special shoes to alleviate his diabetic calllouses; and education and counseling on how to manage his diabetes. (SOF at ¶ 67).

18. Dr. Funk, who never treated this Plaintiff, testified that he reviewed the records and found the medical professionals' actions appropriate. (SOF at ¶¶ 68-72). Accordingly, at least one

medical professional would have acted as these medical professionals did.  Therefore, the Plaintiff's claim fails.

19.     Finally, in Count II of the Plaintiff's Second Amended Complaint, he alleges that Wexford acted with deliberate indifference in failing to provide him with a special diet to manage his diabetes.  (SOF at ¶ 10).  However, this Plaintiff admitted that he already receives a special diet - an evening snack offered to regulate his blood sugar levels in the overnight hours.  (SOF at ¶ 37).  Unsatisfied with the evening snack, the Plaintiff wants a special diet containing more fish and fruit, even though his present diabetes, which has never been an issue in this litigation, is already well-controlled with the insulin and snack.  (SOF at ¶ 26).

20.     An inmate is not entitled to demand specific care, nor the best care possible, but rather he is entitled to reasonable measures to meet a substantial risk of harm.  *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Smith v. Lashbrook,* 15-2340, 2016 U.S. App. LEXIS 22064, *6, 2016 WL 7228697 (7th Cir. Dec. 13, 2016) ("Although [inmate] did not receive the soy-free diet he demanded, prisoners are not entitled to dictate the terms of their care").  There is no indication that the Plaintiff's diabetes is uncontrolled such that he requires any dietary modification, let alone a specific diet of "fish and fruit" in his maximum security prison.

21.     In support of this Motion for Summary Judgment, Wexford attaches a Memorandum of Law and Local Rule 56.1 Statement of Facts, filed concurrently with this Motion.

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC., respectfully requests that this Honorable Court enter an Order granting summary judgment in its favor,

dismissing the case with prejudice, against it, and awarding costs, fees, and for any other relief

that this Court deems just.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: /s/ James F. Maruna
     One of the Attorneys for Defendant,
     WEXFORD HEALTH SOURCES, INC.

Matthew H. Weller / ARDC No. 6278685
James F. Maruna / ARDC No. 6313433
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
mweller@cassiday.com
jmaruna@cassiday.com

8

### CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2017, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court. I certify that service will be accomplished by the CM/ECF system and/or via regular mail to the following:

Melvin Williams (A-01181 )
Stateville-STV
Stateville Correctional Center
P.O. Box 112
Joliet, IL 60434

/s/ James F. Maruna

8235030 JMARUNA;