38088/01245/MHW/JFM

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MELVIN WILLIAMS, | |
| Plaintiff, | Case Number  14 CV 932 |
| v. | Judge Thomas M. Durkin |
| WEXFORD HEALTH SOURCES, INC. | |
| Defendant. | |

## MEMORANDUM OF LAW SUPPORTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, WEXFORD HEALTH SOURCES, INC.

NOW COMES the Defendant, WEXFORD HEALTH SOURCES, INC., by and through its attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for its Memorandum of Law in Support of its Fed. R. Civ. P. 56.1 Motion for Summary Judgment, states as follows:

## I.  INTRODUCTION

Plaintiff, MELVIN WILLIAMS, an inmate at Stateville Correctional Center, currently serving a 50-year sentence for murder, has filed a complaint against Wexford Health Sources, Inc. ("Wexford"), claiming violations related to, *inter alia*, failing to properly diagnose and prevent his diabetic hospitalization on June 14, 2011.  *See* Defendant, Wexford's, 56.1 Statement of Undisputed Facts ("SOF") at ¶¶ 8-10.  The Plaintiff's Complaint sues Wexford, ostensibly, for having a "wide-spread policy or practice of delaying medical treatment to its inmates" despite having no evidence on how Wexford treats other inmates.  (SOF at ¶ 8).  In fact, despite receiving leave to amend his complaint and plead a *Monell* claim, the Plaintiff still alleges that Wexford violated his constitutional rights "by and through its employee Bautista" - plainly, *respondeat superior* liability.  (SOF at ¶ 9).

Even if Plaintiff did plead a viable *Monell* claim against Wexford, it still fails because he cannot prove the underlying medical deliberate indifference. The Plaintiff claims that Wexford knew of, but failed to prevent his hyperglycemic hospitalization; however, the only medical evidence in this case finds that the Plaintiff had no medical history of diabetes and in the days leading up to his hyperglycemic event, his medical symptoms actually suggested cancer, a condition that he previously had, rather than new onset diabetes. (SOF at ¶ 59, 73). The only medical testimony in this case finds that Wexford's medical providers took the appropriate action in working up a diagnosis of recurrent cancer rather than suspecting new onset diabetes in a patient with no prior diabetes history. (SOF at ¶ 59, 73).

At best, the Plaintiff may have the basis of a medical negligence claim against an individual medical provider for working up a diagnosis of recurrent cancer versus new onset diabetes - but medical negligence is not constitutional deliberate indifference, and the Plaintiff has sued only Wexford under *Monell* liability, <u>rather than suing any individual provider</u>. Accordingly, this Honorable Court should enter an Order granting summary judgment in favor of Wexford and against the Plaintiff.

## II.  MATERIAL FACTS

Wexford incorporates its 56.1 Statement of Undisputed Facts, and accompanying exhibits, filed concurrently with its Motion for Summary Judgment and supporting Memorandum of Law.

## III.  ARGUMENT

**A.**    **Venue and Jurisdiction are proper**

This is a claim based on 42 U.S.C. § 1983 and Wexford has consented to this Court's jurisdiction and venue by admission. (SOF at ¶¶ 1-2).

**B.      Summary Judgment is proper in this matter**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  Though facts must be viewed in the light most favorable to the non-moving party at the summary judgment stage, this rule only applies if there is a "genuine" dispute as to those facts.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "A mere scintilla of evidence" in support of the non-movant's position is insufficient; a party will only be successful in opposing summary judgment "when it presents definite, competent evidence to rebut the motion." *Essex v. United Parcel Serv. Inc.,* 111 F.3d 1304, 1308 (7th Cir. 1997).

**C.      The Plaintiff has Failed to Prove his Claim Against Wexford Health Sources, Inc.**

1.      *The Plaintiff has Pled a Monell Claim Against Wexford, But Has Not Identified Any Unconstitutional Policy or Wide-Spread Practice*

The Plaintiff has not met his burden of proof in suing a corporation under § 1983.  Private corporations acting under color of state law, like municipalities, may be held liable for injuries resulting from unconstitutional policies or practices.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009).  In order to recover against a corporate defendant under § 1983, a plaintiff must make two showings.  First the Plaintiff must show that an unconstitutional policy or practice exists, and second, the Plaintiff must show that deliberate indifference occurred because of that unconstitutional policy or practice.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).

Turning to the first showing, the Plaintiff has not produced a single Wexford policy.  Rather, the only "policy" discussed at any point during this litigation was a selection of favorable

3

quotes that the Plaintiff pulled from an outdated version of Wexford's Provider Handbook. As Dr. Funk, Wexford's designated Fed. R. Civ. P. 30(b)(6) witness, testified, the provider handbook is not an illustration of any Wexford policy or procedure. (SOF at ¶ 18). Rather, it is information given to new employees to acclimate them to providing medical care to an incarcerated population. *Id.* In any event, both Dr. Funk and CMT Olsen-Foxon testified that the IDOC's administrative and institutional directives, rather than Wexford's, govern the administration of healthcare to inmates at Stateville. *Id.* If Plaintiff had a problem with a policy controlling his medical care, he should have raised such a claim against the IDOC.

Plaintiff's failure to identify a concrete policy is telling, and absent clear evidence of an unconstitutional policy, this Court should not assume that one exists. In *Montague v. Wexford Health Sources, Inc.*, the Seventh Circuit affirmed the District Court's grant of summary judgment to Wexford when an inmate claimed that Wexford had an unconstitutional policy or practice, but could produce no evidence of any such policy or practice. 615 Fed. App'x. 378, 379 (7th Cir. 2015). The Seventh Circuit noted that the prisoner's self-serving idea of a policy or practice that promoted delayed medical treatment was senseless because it would actually end up costing Wexford more money in the long-term. *Id.*

*Montague* is instructive in the instant litigation. Plaintiff has produced no evidence of an unconstitutional policy, yet he alleges that Wexford has a "wide-spread policy or practice of delaying medical treatment to its inmates". (SOF at ¶ 8). As the Seventh Circuit explained, it makes no sense that Wexford would have an "off the books" implied policy or practice to delay or provide inadequate medical treatment to inmates because that would end up costing Wexford more money in the long-term either through increased medical costs, such as emergency medical treatment, or increased litigation costs.

4

Turning to the Plaintiff's widespread practice claim, a prisoner needs evidence of how other inmates were treated in order to show that his treatment was not a "random event" but truly the result of a corporate policy. *Grieveson v. Anderson,* 538 F.3d 763, 774 (7th Cir. 2008). Conclusory, factually unsupported allegations about the experience of other inmates are not a sufficient basis to prove *Monell* liability against Wexford. *Haywood v. Wexford Health Sources, Inc.,* 16-cv-3566, 2017 U.S. Dist. LEXIS 28416, * 11 (N.D. Ill. Mar. 1, 2017). Here, the Plaintiff has not produced any evidence of how other inmates were affected by Wexford's alleged "wide-spread" practice of delaying medical treatment; instead, his claim of a widespread practice is limited to only his own experience.

Several courts in this District have rejected prisoner *Monell* claims when the evidence of the "widespread" practice is limited solely to the Plaintiff-inmate's treatment. *See Arita v. Wexford Health Sources, Inc.,* 15-cv-1173, 2016 U.S. Dist. LEXIS 1501068, *7-8, 2016 WL 6432578 (N.D. Ill. Oct. 21, 2016) (dismissing a *Monell* claim against Wexford when the Plaintiff's only *Monell*-related allegation was a boilerplate statement that "'Wexford…has a policy of ignoring not only [his] requests/complaints, but other inmates'…'" and the prisoner supported that boilerplate allegation by offering only evidence of his own treatment); *Taylor v. Wexford Health Sources, Inc.,* 15-c-5190, 2016 U.S. Dist. LEXIS 76341 *14, 2016 WL 3227310 (N.D. Ill. June 23, 2016) (dismissing the *Monell* claim because the prisoner did "not allege that any other detainee suffered from similar issues, only including a conclusory reference to other prisoners' experience"); *Velazquez v. Williams,* 14-cv-9121, 2015 U.S. Dist. LEXIS 84464, *11, 2015 WL 4036157 (N.D. Ill. June 30, 2015) (holding that a prisoner's allegation that Wexford had a policy of denying medication to inmates was insufficient to state a *Monell* claim when it detailed only the plaintiff's own treatment).

Discovery has closed and the Plaintiff cannot meet his first hurdle in proving a *Monell* claim - that an unconstitutional policy or widespread practice exists. Therefore, this Court should grant summary judgment in Wexford's favor.

2.   *Nor Can the Plaintiff Sue Wexford based on the Actions of its Employees*

The Plaintiff cannot sue Wexford based on the actions of its employees. The doctrine of *respondeat superior* liability does not apply to actions filed under 42 U.S.C. § 1983, including against private corporations like Wexford. *Pacelli v. Devito*, 972 F.2d 871, 877 (7th Cir. 1992); *see also Iskander v. Forest Park*, 690 F.2d 126, 127 (7th Cir. 1982).

Despite amending his pleading in order to, ostensibly, sue Wexford for *Monell* liability, Plaintiff's still raises numerous allegations of *respondeat superior* liability, " Wexford, by and through its agents or employees, had knowledge of and documented Plaintiff's abnormal blood laboratory test results and failed to take action…"; "Wexford, by and through its employee Bautista, failed to render medical treatment"; "Wexford, by and through its employee Bautista, acted with reckless disregard in failing to diagnose and treat Plaintiff as a diabetic". (SOF at ¶ 9) (emphasis added). The case law is clear that Wexford cannot be held liable for its employees' alleged constitutional torts. *Hahn v. Walsh*, 762 F.3d 617, 640 (7th Cir. 2014).

Alternatively, even if Plaintiff could sue Wexford vicariously for its employees' torts, Wexford's medical providers, including Dr. Bautista, could individually assert qualified immunity in order to defeat Plaintiff's *respondeat* claim. Without a viable claim against the agent, a plaintiff's *respondeat superior* claim against the principal fails. *Shelton v. Schneider*, 05-C-5955, 2006 U.S. Dist. LEXIS 1237, * 24-25, 2006 WL 59364 (N.D. Ill. Jan. 4, 2006).

The Supreme Court has granted qualified immunity to private contractors performing traditional government roles. *Filarsky v. Delia,* 566 U.S. 377, 390 (2012). While the Seventh

Circuit, in *Petties v. Carter,* questioned whether Wexford medical providers can assert immunity; at least one other Appellate Court, in a case decided after *Petties,* followed *Filarsky* and awarded qualified immunity to a private doctor working in a state-owned prison. *See Petties,* 836 F.3d 722, 733-34 (7th Cir. 2016); *but see also Estate of Lockett v. Fallin,* 841 F.3d 1098, 1108-09 (10th Cir. 2016) ("Dr. Doe stands in the same position as the attorney in *Filarsky* - he was a private party hired to do a job for which a permanent government employee would have received qualified immunity").

If Plaintiff wanted to seek redress for the wrongs, allegedly, committed by Dr. Bautista or another Wexford employee, he should have sued that person rather than Wexford. He did not and/or could not.

      3.    <u>The Wexford Medical Providers Did Not Exhibit Deliberate Indifference</u>

Even if the Plaintiff had met his threshold burden of proof in establishing an unconstitutional policy or widespread practice of Wexford, he still fails the second hurdle of his *Monell* claim - that deliberate indifference occurred because of that policy or widespread practice. *Pembaur*, 475 U.S. at 479-80. In order to meet the second prong, the Plaintiff must show that the unconstitutional policy was the "direct cause" or "moving force" behind the alleged deliberate indifference to his serious medical needs. *See Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010). The Plaintiff may show that the policy is the "moving force" behind the constitutional violation by demonstrating that the policy, itself, is unconstitutional. *Id.* However, whereas here, when the Plaintiff has identified no formal policy that is unconstitutional, the Plaintiff must make his required deliberate indifference showing through "a series of bad acts" creating an inference that the officials were aware of and condoned their employees' misconduct. *See Id*.; *see also Stallings v. Hardy*, 11-c-8107, 2013 U.S. Dist. LEXIS

153402, *28, 2013 WL 5781805 (N.D. Ill. Oct. 25, 2013) (holding that because the individual Wexford doctors did not commit deliberate indifference, "Wexford cannot be liable for an allegedly ineffective custom or policy of providing overall medical care to prisoners").

The United States Supreme Court has articulated a three-part test for proving deliberate indifference. The Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the defendant was subjectively aware of a specific, serious medical need or risk; and (3) that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's alleged need or risk. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). In other words, the Plaintiff must establish that the medical providers actually knew (independently and subjectively) that the Plaintiff needed treatment for a serious medical need or risk but nevertheless <u>purposely and deliberately withheld such treatment</u>. *See Sellers*, 41 F.3d at 1102 (emphasis added).

As the only Defendant in this case is Wexford, we must look to the conduct of the medical providers in this case in order to establish whether any provider's care of this inmate constituted deliberate indifference. If no medical provider's care evidences deliberate indifference, then the Plaintiff's *Monell* claim against Wexford necessarily fails.

> a.    *The Plaintiff cannot prove that the providers' had the requisite personal knowledge that he was a diabetic or at risk of developing diabetes prior to June 14, 2011*

The Plaintiff cannot satisfy his burden of proving that the medical providers knew that he was a diabetic prior to June 14, 2011. The Plaintiff must show that, "the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an 'excessive risk to inmate health or safety'". *Vance*, 97 F.3d at 993.

8

First, no one knew that the Plaintiff was diabetic. The only medical doctor who gave testimony in this case testified that the Plaintiff was not a diagnosed diabetic until June 14, 2011, when his Accu-Check score came back high. (SOF at ¶ 59). The Plaintiff confirmed that prior to June 14, 2011, he had never been diagnosed diabetic. (SOF at ¶ 40). He also had no prior family history of diabetes. (SOF at ¶ 40). The Plaintiff even confirmed that prior to June 14, 2011, he never told any Stateville medical provider that he had any concerns that he was a diabetic. (SOF at ¶ 41).

Second, there was no objective knowledge available to the providers that the Plaintiff was a diabetic. Dr. Funk testified that there are three primary complaints that a new onset diabetic will make to a medical provider: (1) frequent urination; (2) weight loss; and (3) excessive thirst. (SOF at ¶ 29). The Plaintiff complained of only one of those symptoms - weight loss; and he only complained about weight loss one time, on June 13, 2011 - the day before he was diagnosed as a diabetic on June 14, 2011. (SOF at ¶ 57). Rather, in the weeks leading up to June 14, 2011, the Plaintiff complained about multiple other symptoms that are not suggestive of new onset diabetes including: (1) dizziness; (2) leg pain; (3) foot pain; (4) tingling or numbness in the hands, legs, and feet; and (5) swelling in the hands and feet. (SOF at ¶ 30). **As Dr. Funk noted, the Plaintiff's complaints in the weeks leading up to his diagnosis as a new onset diabetic "were not at all suggestive of diabetes."** (SOF at ¶ 68).

Simply, there is no evidence in the record that any medical provider had any knowledge, subjective or objective, that this Plaintiff was a diabetic, was developing diabetes, or was even at risk for diabetes. As such, the Plaintiff cannot satisfy his burden of proving that any medical provider knew that he was a diabetic, or at risk for diabetes, and then deliberately or recklessly withheld treatment of his diabetes.

b.   *Nor can the Plaintiff show that the medical providers displayed the required culpability*

The Plaintiff cannot meet his burden of proof that the medical providers acted with the required culpability in treating his complaints. The third element of a deliberate indifference claim is that the defendant demonstrated a culpable mental state by deliberately ignoring the plaintiff's need or risk. *Estelle,* 429 U.S. at 107. In order to infer the required culpability, the medical professional's decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A medical professional is "entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under these circumstances." *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008). Questions of whether certain diagnostic techniques or forms of treatment are warranted are a "classic example of a matter for medical judgment". *Estate of Cole ex rel. Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). As the Seventh Circuit recently noted in an *en banc* decision, "Even objective recklessness - failing to act in the face of an unjustifiably high risk that is so obvious that it should be known - is insufficient to make out a claim." *Petties,* 836 F.3d at 728.

Here, only one medical doctor gave testimony in this case. The Plaintiff's attorney asked that doctor whether the medical providers acted outside the standard of care in working up alternative diagnoses, namely cancer, as opposed to recognizing that the Plaintiff was a new onset diabetic. That doctor testified that working up the cancer diagnosis fell within the standard of care. (SOF at ¶ 73). Plaintiff's counsel then asked that doctor whether the entirety of the Plaintiff's complaints of pain in the lower extremities, tingling and numbness in the hands and feet, swelling on and off indicated that the patient may have diabetes. (SOF at ¶ 68). The doctor answered succinctly, "the answer to your question is no, absolutely not." (SOF at ¶ 68).

Rather than working up a diagnosis of diabetes, a condition the Plaintiff had no history or symptoms of, the providers worked up a diagnosis of recurrent cancer based on the fact that in 2007, the Plaintiff had cancer that required surgical removal of a kidney, that a 2011 blood test found an abnormal AFP tumor marker reading that could indicate a cancer of the liver, and that the Plaintiff complained of losing 40 pounds, which could also be caused by cancer. (SOF at ¶ 48, 57, 70). To further evaluate the possibility of a liver cancer, Stateville's Medical Director ordered a liver ultrasound study for this Plaintiff one day before the Plaintiff was found in his cell sluggish and subsequently diagnosed as a diabetic. (SOF at ¶ 57).

Dr. Funk testified that the providers' treatment of the Plaintiff in the weeks leading up to his hyperglycemic event was adequate. (SOF at ¶¶ 68-73). Yet, the Plaintiff has offered no verifying medical evidence in support of his claim that the Wexford providers' treatment was inadequate, beyond his own lay opinions. Without medical evidence of inadequate treatment, a prisoner's self-serving opinion of the quality of his medical treatment is insufficient to raise a genuine issue of material fact. *Walker v. Zunker*, 30 Fed. App'x. 625, 628 (7th Cir. 1999); *see also Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) (finding that a plaintiff must have such "verifying medical evidence" when the deliberate indifference claim is based on the alleged failure to treat a condition adequately).

In order to succeed on his claim, the Plaintiff must show that "no minimally competent medical professional would have so responded under these circumstances." *Sain*, 512 at 894-95. Dr. Funk never treated the Plaintiff, but reviewed the notes of the providers who did treat the Plaintiff, and he testified that the providers responded appropriately by referring and working up a cancer diagnosis, and agreed that the Plaintiff's complaints in the weeks leading up to his hyperglycemic event were not at all suggestive of new onset diabetes. (SOF at ¶¶ 68-73).

       c.       *Nor can the Plaintiff show that the providers acted with neglect*

The Plaintiff has failed to carry his burden of identifying a pattern of neglect. The Seventh Circuit requires that, when assessing whether the Plaintiff has satisfied the extremely high burden of proving deliberate indifference, the totality of an inmate's medical care must be considered. *See Dunigan by Nyman v. Winnebago County,* 165 F.3d 587, 591 (7th Cir. 1999). A plaintiff's "factual highlights" are not sufficient to deny summary judgment in the defense's favor. *Id.* A pattern of neglect must be evident in the record. *See Id.*; *see also, e.g., Guttierez v. Peters*, 111 F.3d 1364, 1374-75 (7th Cir. 1997) (holding that isolated incidents of neglect during an otherwise continuous stretch of adequate medical care is insufficient to support an inference of deliberate indifference and a court must examine the entire record, not just isolated events).

Here, in the <u>seven (7) weeks</u> between when the Plaintiff first complained to CMT Barnett about pain in his leg and his emergency treatment to St. Joseph hospital, the Plaintiff received <u>five (5) medical appointments with four (4) different doctors and physicians' assistants</u>; he also had <u>blood drawn and sent out to the University of Illinois-Chicago Medical Center</u>; and he received <u>a referral for an ultrasound study of his liver</u>. (SOF at ¶ 44, 47, 50, 54, 57). In addition to his appointments with higher-level medical providers, the Plaintiff had access to nursing sick call where he could request an appointment with a provider at any time. (SOF at ¶13). In fact, the Plaintiff admitted that he could always get medical attention at Stateville if he needed attention. (SOF at ¶15). While his April 22, 2011 M.D. Sick Call was cancelled due to no provider being available, it occurred a few weeks later, and, in any event, the Plaintiff saw another provider for another condition just three (3) days later, on April 25, 2011, and Plaintiff agreed that he would always address any medical needs with a provider, but he raised no such concerns during this April 25th appointment. (SOF at ¶ 49, 51, 54).

Since Plaintiff's diagnosis as a new onset diabetic, he has received regular checkups every few months with a medical provider in Stateville's diabetic clinic in order to confirm that his diabetes, including diet, are well controlled; insulin twice per day; a special snack each evening in order to help him regulate his blood sugar levels during the overnight hours; a permit from Wexford's Site Medical Director asking the IDOC to let him wear special shoes in order to avoid any diabetic foot callouses; and education and counseling on how to manage his diabetes. (SOF at ¶ 67). Clearly, there has been no neglect by the medical providers in handling the Plaintiff's diabetes.

> d.  At best, the Plaintiff may have a claim for medical negligence against an individual provider, but medical negligence is not deliberate indifference, and, in any event, Plaintiff has not sued any individual provider

At best, the Plaintiff may have a claim for medical negligence against an individual medical provider for working up a cancer diagnosis instead of a diabetes diagnosis. However, medical negligence is not a claim for constitutional deliberate indifference. It is well settled that gross negligence, tortious recklessness or even ordinary negligence are not enough to establish a claim for deliberate indifference. *Varnado*, 920 F.2d at 321. Unsuccessful treatment and medical malpractice are not sufficient to establish the required culpability behind a claim for deliberate indifference. *Id.* "The Constitution is not a medical code that mandates specific medical treatment". *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal brackets omitted). Moreover, to even proceed on a theory of medical negligence, the Plaintiff needed the affidavit of a qualified healthcare professional to support his claims, as required by the Illinois Healing Art Malpractice Act, 735 ILCS 5/2-622. *See Liebich v. Hardy*, 11-c-5624, 2014 U.S. Dist. LEXIS 49550, *4-5, 2014 WL 1395957 (N.D. Ill. Apr. 10, 2014). He provided no such affidavit.

In fact, based on Dr. Funk's testimony, Plaintiff cannot secure such an affidavit. The Plaintiff's rapid weight loss between his May and June medical appointments was suggestive of

cancer - a disease the Plaintiff previously had - and many other conditions besides diabetes - a disease of which the Plaintiff had no documented history. (SOF at ¶ 69). Consistent with the public-at-large, glucose measurements are only taken of inmates if the patient is diabetic or demonstrates clinical findings suggestive of diabetes, which this Plaintiff did not. (SOF at ¶ 72).

4.     *The Plaintiff has Not Established that Wexford's Failure to Give the Plaintiff his Desired Diet Constitutes Deliberate Indifference*

Finally, the Plaintiff has not established that Wexford's, alleged, failure to provide him with a special diabetic diet constitutes deliberate indifference. In Count II of the Plaintiff's Second Amended Complaint, he alleges that Wexford acted with deliberate indifference by failing to provide him with a special diet to manage his diabetes. (SOF at ¶ 10). As this is a claim for deliberate indifference, the same standards and arguments discussed above apply to how the Court should adjudicate this claim against Wexford.

Here, the undisputed facts find that Wexford has no control over the food process at Stateville. (SOF at ¶ 26). The Plaintiff confirmed as much when he testified that he first requested a special diabetic diet from an IDOC employee, the last person that he spoke with regarding his diet was an IDOC employee, and he has not spoken with any medical provider, at all, about his diet since 2012. (SOF at ¶ 27).

Moreover, this Plaintiff already receives a special diet for his diabetes - he just wants different food. The Plaintiff admitted that insulin-dependent diabetics at Stateville receive a special evening snack that is not provided to regular inmates at the prison. (SOF at ¶ 37). Insulin-dependent diabetic inmates receive this special snack because they receive their insulin twice per day - in the morning and before bed. (SOF at ¶ 37). After the morning insulin, the inmate gets to eat breakfast, lunch, and dinner in order to raise his blood sugar. (SOF at ¶37). However, after the bedtime insulin, the inmates do not eat again until the next morning. (SOF at

¶ 37). Insulin-dependent diabetics receive a special snack that they get to keep in their cells in order to raise their blood sugar levels during the overnight hours, if needed. (SOF at ¶ 37).

Unsatisfied with receiving an extra evening snack, the Plaintiff now wants a special diet containing more fish and fruit, and less sugary food, even though he does not know if that diet exists at Stateville. (SOF at ¶ 26). The Plaintiff wants this diet so that he can manage his diabetes, even though his medical records demonstrate that his diabetes is already well-controlled with the evening snack regimen, and even though the Plaintiff admitted that he still purchases sugary foods from Stateville's commissary, including king-sized candy bars and candy cakes. (SOF at ¶ 66). Case-law is well-settled that inmates are not entitled to demand specific care, nor the best care possible, but rather they are entitled to reasonable measures to meet a substantial risk of harm. *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2005); *Smith v. Lashbrook,* 15-2340, 2016 U.S. App. LEXIS 22064, *6, 2016 WL 7228697 (7th Cir. Dec. 13, 2016) ("Although [inmate] did not receive the soy-free diet he demanded, prisoners are not entitled to dictate the terms of their care").

There is no indication in the record that the Plaintiff's diabetes is uncontrolled such that he requires any dietary modification, let alone his desired "fish and fruit". Accordingly, his claim against Wexford for failing to provide a special diet of "fish and fruit" fails.

## IV. CONCLUSION

WHEREFORE, Defendant, WEXFORD HEALTH SOURCES, INC., respectfully requests that this Honorable Court enter an Order granting summary judgment in its favor, dismissing the case, with prejudice, against it, costs, and for any other relief that this Court deems just.

Respectfully submitted,

CASSIDAY SCHADE LLP

15

By:  /s/ James F. Maruna
     One of the Attorneys for Defendant,
     WEXFORD HEALTH SOURCES, INC.

Matthew H. Weller / ARDC No. 6278685
James F. Maruna / ARDC No. 6313433
CASSIDAY SCHADE LLP
20 North Wacker Drive, Suite 1000
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – Fax
mweller@cassiday.com
jmaruna@cassiday.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 22, 2017, I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court.   I certify that service will be accomplished by the CM/ECF system and/or via regular mail to the following:

> Melvin Williams (A-01181)
> Stateville-STV
> Stateville Correctional Center
> P.O. Box 112
> Joliet, IL 60434

/s/ James F. Maruna

8234309 JMARUNA;JMARUNA